UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

MONICA GOKHBERG,

Plaintiff,

-against-

THE HUNTINGTON NATIONAL BANK et al.,

Defendants.

-----------------------------------x

**MEMORANDUM & ORDER**
23-CV-9481 (EK)(PK)

ERIC KOMITEE, United States District Judge:

Plaintiff Monica Gokhberg took out a home equity line of credit on her condominium with TCF Bank. That loan was later acquired by defendant Huntington National Bank. Gokhberg, proceeding *pro se*, alleges that Huntington began charging her for condominium insurance that was not required under the loan agreement. When she refused to pay the insurance fees, Huntington began reporting late payments on the loan in its monthly transmissions to credit reporting agencies. This ultimately led defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion, LLC to downgrade Gokhberg's credit score significantly.

Gokhberg brings New York common law tort claims against all four defendants, as well as claims under the Fair Credit Reporting Act against the three credit reporting agencies. Each defendant has moved to dismiss the claims

against it. For the reasons that follow, Gokhberg's complaint is dismissed in its entirety.

## I. Background

The following facts are drawn from the First Amended Complaint ("Compl."), ECF No. 24, and they are presumed true for purposes of this motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).[1] The Court also takes notice of the Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC Agreement") between Gokhberg and TCF National Bank, ECF No. 36-1, at 4, which is integral to the complaint.[2] *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).[3]

In December 2019, Gokhberg purchased a condominium unit in Florida in an all-cash transaction. Compl. ¶ 8. The following month, she took out a home equity line of credit — secured by the unit — with TCF Bank. *Id.* ¶ 9. In November

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[2] Unless otherwise noted, page numbers in citations refer to internal, rather than ECF, pagination.

[3] Gokhberg asks us to consider "an affirmation of Yury Gokhberg (Exhibit 'C') who was involved in communications with Huntington." Pl.'s Opp'n to Huntington's Mot. 15, ECF No. 41. But even if it were appropriate to do so on a motion to dismiss, the first (and only substantive) page of Yury Gokhberg's affirmation is missing. *See* Exhibit C, ECF No. 41, at 31.

2021, defendant Huntington National Bank ("Huntington") acquired the loan from TCF Bank by operation of a merger.[4] *Id.* ¶ 12.

Gokhberg says that the HELOC Agreement required her unit to be covered by the building's master insurance policy but did not require her to purchase "HO6," meaning individual insurance. Compl. ¶¶ 11-12. Yet, when Huntington acquired the loan, it began charging her for condominium insurance — and continued to do so even after Gokhberg furnished her building's master policy. *Id.* ¶¶ 12-13. Huntington contends that it was within its rights to do so. *See* Huntington's Mot. 3. And, indeed, the agreement provides that the "type of proof" of insurance "must be acceptable" to the lender and that, if it is not, the lender "may purchase insurance at [the borrower's] expense." *See* HELOC Agreement 3.

Huntington subsequently "filed twenty (20) late payment reports on [Gokhberg's] record." Compl. ¶ 18. Gokhberg challenged these reports, but Huntington "refused to issue corrections" and Gokhberg's credit score dropped from 760 to 400 points. *Id.* ¶¶ 14-16. Among the credit agencies that reported the late-payment information were defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information

---

[4] Huntington notes that it "did not purchase the Loan specifically and is, instead, the successor by merger to TCF." Huntington's Mot. 2 n.2, ECF No. 36-2.

Services, LLC ("Equifax"), and TransUnion, LLC ("TransUnion," and collectively, the "CRA Defendants"). *Id.* ¶ 22. Because of this negative — and, Gokhberg says, false — reporting, she "is unable to open accounts in other banks, get a job, get a new mortgage . . . or get approved for a rental" and is now "seeking permanent residency on the European continent." *Id.* ¶ 20.

In October 2023, Gokhberg sued Huntington, as well as Huntington Bancshares Inc., in New York State Supreme Court, bringing claims for libel *per se*, *prima facie* tort, breach of fiduciary duty, fraud, and "emotional distress." *See* ECF No. 1-2. The Huntington defendants removed the case to federal court. *See* ECF No. 1. In February 2025, the Court dismissed Gokhberg's claims against Huntington Bancshares Inc. *See* ECF No. 21. Gokhberg then filed an amended complaint, adding claims against the CRA Defendants for libel *per se*, *prima facie* tort, infliction of emotional distress, and violations of the Fair Credit Reporting Act ("FCRA").[5] Compl. ¶¶ 24-39, 40-46, 53-58, 66-72.

On June 12, 2025, Huntington moved to dismiss Gokhberg's claims. *See* ECF No. 36. Each of the CRA Defendants

[5] Gokhberg's sixth cause of action is for "punitive damages." Compl. ¶¶ 59-65. But "there is no separate cause of action in New York for punitive damages." *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004).

has subsequently also moved to dismiss the complaint. *See* ECF Nos. 45 to 47.

## II. Legal Standard

The Court "must construe *pro se* pleadings broadly and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Gokhberg's Claims Against Huntington

Gokhberg's claims against Huntington for libel *per se*, *prima facie* tort, and infliction of emotional distress are preempted by the FCRA. Although her claims for breach of fiduciary duty and fraud are not preempted, they still cannot survive as pled.

#### 1. The FCRA Preempts Gokhberg's Libel, *Prima Facie* Tort, and Infliction of Emotional Distress Claims Against Huntington

Section 1681t(b)(1)(F) of FCRA states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies" pursuant to the FCRA. 15 U.S.C. § 1681t(b)(1)(F). Section 1681t(b) applies equally to state statutory claims *and* state common law claims. *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011). Gokhberg argues that this provision "must be read together" with Section 1681h(e), which "bars state-law claims for defamation, invasion of privacy, and negligence *unless* the plaintiff plausibly alleges malice or willful intent to injure." Pl.'s Opp'n to Huntington's Mot. 2 (emphasis added). But the Second Circuit already rejected that argument in *Macpherson*: the earlier-enacted Section 1681h(e) "does not prevent the later-

enacted [Section] 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption." 665 F.3d at 48.

Section 1681t(b)(1)(F)'s preemptive effect is limited, however, to "claims that *concern* a furnisher's responsibilities." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015). In other words, it "does not preempt state law claims against a defendant who happens to be a furnisher of information" if the claims themselves "do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA." *Id.*

Gokhberg argues that none of her claims arise "from Huntington's status as a 'furnisher of information.'" Pl.'s Opp'n to Huntington's Mot. 3. But she admits that her libel *per se* "count addresses the deliberate transmission of false payment histories." *Id.* Clearly, then, that claim is preempted by Section 1681t(b)(1)(F). *See Macpherson*, 665 F.3d at 46-48 (holding state tort claim that a bank "willfully and maliciously provided false information" to a consumer credit reporting agency was preempted by the FCRA).

As pled, Gokhberg's *prima facie* tort and "emotional distress" claims both also clearly concern Huntington's

responsibilities as a furnisher of information.[6] *See* Compl. ¶ 44 (alleging Huntington committed a *prima facie* tort because it "did not have permission, authorization, or privilege to publish the defamatory statement in its reports to the credit agencies about" Gokhberg); *id.* ¶ 55 ("Defendants continued publication of false negative credit data, despite [Gokhberg's] disputes, [and thereby] inflicted emotional distress by depriving her of financial and personal opportunities, [and] subjecting her to constant worry, anxiety, and humiliation."). Gokhberg tries to argue that her *prima facie* tort claim instead concerns the fact that Huntington "force-placed unnecessary insurance" and "diverted [her] timely payments." Pl.'s Opp'n to Huntington's Mot. 6. But that is not how Gokhberg characterizes her claim in the complaint, and even a *pro se* litigant "may not use his or her opposition to a dispositive motion as a means to amend the complaint" to assert new legal claims. *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007). Accordingly, we hold that Gokhberg's *prima facie* tort and infliction of

---

[6] The complaint does not specify whether Gokhberg's claim is for negligent infliction of emotional distress or intentional infliction of emotional distress ("IIED"). *See* Compl. ¶¶ 53-58. But Gokhberg's briefing suggests that she intended to bring an IIED claim. *See* Pl.'s Opp'n to Huntington's Mot. 11-13.

emotional distress claims are also preempted by Section 1681t(b)(1)(F).[7]

But Gokhberg is correct that not all her claims against Huntington are preempted by the FCRA. From the face of the complaint, it is unclear whether Gokhberg's breach of fiduciary duty and fraud claims concern Huntington forcing her to buy insurance or reporting her nonpayment to the CRAs. So, construing those claims liberally toward Gokhberg at this stage, we conclude that they "target Huntington's servicing conduct." Pl.'s Opp'n to Huntington's Mot. 3.

2. Gokhberg Has Not Stated a Claim for Breach of Fiduciary Duty or Fraud Against Huntington

Nevertheless, Gokhberg's claims against Huntington for breach of fiduciary duty and fraud must also be dismissed. "The elements of [a] cause[] of action to recover damages for breach of fiduciary duty . . . include the existence of a fiduciary relationship." *U.S. Bank Nat'l Ass'n v. Kahn Prop. Owner, LLC*, 172 N.Y.S.3d 25, 28 (App. Div. 2d Dep't 2022).[8] "As a general matter, a lender is a not a fiduciary of its borrower under New

[7] Gokhberg argues that the Court should "postpone the issue" of preemption "until a factual record is developed." Pl.'s Opp'n to Huntington's Mot. 3-4. But "[i]t is well-established" that preemption is a legal issue that "may be analyzed and decided at the motion to dismiss stage." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 672 (S.D.N.Y. 2017) (collecting cases), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).

[8] The parties agree that New York law applies. *See* Huntington's Mot. 11; Pl.'s Opp'n to Huntington's Mot. 7-8.

York law." *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010) (collecting cases). And Gokhberg alleges no facts to support the conclusion that she "reposed trust or confidence in [Huntington] whereby [it] gained superiority or influence" over her. *Id.* Accordingly, Gokhberg has not stated a claim for breach of fiduciary duty.

Gokhberg has also failed to allege the elements of a common law fraud claim. "To establish fraud, a plaintiff must show a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance . . . and injury." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 56 N.Y.S.3d 21, 24 (App. Div. 1st Dep't 2017), *aff'd*, 31 N.Y.3d 569 (2018). Gokhberg's complaint does not allege that she relied on any statement by Huntington to her detriment. In her opposition brief, she argues that "the statements [at issue] are the letters and electronic notices declaring the loan uninsured and past due." Pl.'s Opp'n to Huntington's Mot. 9. But she disputed those statements; she did not rely on them. *See* Compl. ¶¶ 14-15 ("Bank refused to issue corrections to the credit agencies" even after it "had already been furnished with the condominium Master Insurance Policy

several times").[9] Gokhberg's fraud claim against Huntington is therefore dismissed.

**B. Gokhberg's Claims Against the CRAs**

Gokhberg's claims against the CRAs must also be dismissed. She has not stated a claim for relief under the FCRA because she fails to allege that the disputed information was inaccurate. Of her common law claims, only her libel claim is preempted by the FCRA. But she also has not stated a valid claim for *prima facie* tort or IIED against the CRAs.

1. Gokhberg Has Not Stated a Claim Under the FCRA

To establish a Section 1681e (inaccurate reporting) or Section 1681i (failure to reinvestigate) claim against a consumer reporting agency, a plaintiff must allege facts sufficient to demonstrate that the disputed information is inaccurate. *See Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023); *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (collecting cases). Gokhberg has not done so here.

[9] In Gokhberg's opposition to Experian's motion to dismiss, she suggests that Huntington gave her "written confirmation that the loan was not delinquent." Pl.'s Opp'n to Experian's Mot. 2, ECF No. 50-1. But this allegation appears nowhere in the complaint and runs counter to Gokhberg's characterization of Huntington's conduct elsewhere. *See, e.g.*, Pl.'s Opp'n to Huntington's Mot. 6 ("Huntington force-placed unnecessary insurance, diverted Plaintiff's timely payments, and — despite receiving and acknowledging the Master Insurance Policy — filed twenty late-payment reports . . . ."). Accordingly, the Court does not credit this allegation.

"[A] credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021). The CRA Defendants incorrectly suggest that only a factual inaccuracy is cognizable under the FCRA. *See* TransUnion's Mot. 3, ECF No. 47-1.[10] In fact, the Second Circuit has held the opposite: "there is no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023). Credit reporting agencies are "required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Mader*, 56 F.4th at 270. However, an "alleged inaccuracy [that] evades objective verification," *Sessa*, 74 F.4th at 43, because it requires "bespoke attention and legal reasoning" is not cognizable. *Mader*, 56 F.4th at 270.

"In the aftermath of *Sessa*, cases appear to distinguish between inaccuracies that, although predicated upon a legal question, are readily verifiable from the plain language of a document or statute, and those that involve some further

[10] Indeed, Experian quotes *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023), for the very district court holding that it overturned. *See* Experian's Mot. 9, ECF No. 45.

level of analysis and factual development." *Rothman v. Experian Info. Sols., Inc.*, No. 24-CV-1080, 2026 WL 867140, at *7 (S.D.N.Y. Mar. 30, 2026). Here, the alleged inaccuracy is not readily verifiable from the plain language of the HELOC Agreement. In fact, the agreement states that the "type of proof" of insurance "must be acceptable" to the lender and that, if it is not, the lender "may purchase insurance at [the borrower's] expense." HELOC Agreement 3. Nowhere does it say that a building's master insurance policy is a sufficient form of insurance. Accordingly, Gokhberg's position would force CRAs to resolve a dispute over contract interpretation. That is not what the FCRA requires.

2. <u>Gokhberg's Libel *Per Se* Claim Against the CRAs Is Preempted Under the FCRA</u>

Gokhberg's libel claim against the CRAs is preempted by Section 1681h of the FRCA. That section provides that:

> no consumer may bring any action or proceeding in the nature of defamation . . . against any consumer reporting agency . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Gokhberg argues that Section 1681h does not preempt her claim because she pled that the CRAs "acted with malice by knowingly continuing to publish false late-payment notations after receiving evidence of their inaccuracy." Pl.'s Opp'n to Experian's Mot. 5; *see also* Pl.'s Opp'n to TransUnion's

Mot. 3, ECF No. 48 (same). But, as discussed above, Gokhberg has not alleged that the published information was inaccurate. And merely continuing to publish *disputed* information cannot be evidence of malice — otherwise, the exception would swallow the rule. Gokhberg's libel claim against the CRAs is dismissed.

3. Gokhberg Has Not Stated a Claim for *Prima Facie* Tort or IIED Against the CRAs

Gokhberg's claims for *prima facie* tort and intentional infliction of emotional distress must also be dismissed. "It is well-established that a claim for *prima facie* tort cannot duplicate a plaintiff's other causes of action." *Bhagat v. Shah*, No. 24-CV-1424, 2025 WL 2396668, at *3 (S.D.N.Y. Aug. 18, 2025) (collecting cases). Nor should it "become a 'catch-all' alternative for every cause of action which cannot stand on its legs." *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009). Accordingly, where — as here — a plaintiff's *prima facie* tort claim "avails itself of the terminology of defamation," it cannot proceed. *Id.*

As for Gokhberg's IIED claim, she has not pled facts sufficient to demonstrate that the CRAs engaged in "extreme and outrageous conduct." *See Novak v. Sisters of Heart of Mary*, 180 N.Y.S.3d 187, 190 (App. Div. 2d Dep't 2022) (identifying the elements of IIED claim). That element "is essential, in that liability will only be imposed when the conduct is so outrageous

in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yoo v. Choi*, 179 N.Y.S.3d 326, 329 (App. Div. 2d Dep't 2022). And "[o]ther courts within this Circuit have dismissed claims for [IIED] where plaintiffs alleged behavior far worse than the inaccurate reporting of credit information alleged here." *Weeden v. Liberty Mut. CCS Collections*, No. 24-CV-1258, 2026 WL 547900, at *4 (W.D.N.Y. Feb. 27, 2026) (collecting cases).

## IV. Conclusion

For the foregoing reasons, defendants' motions to dismiss are granted. Because Gokhberg is proceeding *pro se*, she may — on or before October 28 — file an amended complaint that corrects the deficiencies identified herein. She is further advised that any amended complaint will completely replace the original complaint, that it must be captioned "Second Amended Complaint," and that it must bear the same docket number as this order: 23-CV-9481(EK)(PK). If Gokhberg does not file an amended complaint by the date specified, the Clerk of Court will enter judgment and close the case. The Clerk is respectfully directed to mail a copy of this order to Gokhberg and to note the mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good

faith, and therefore denies in forma pauperis status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 28, 2026
Brooklyn, New York